## INVESTMENT CORPORATION OF PHILADELPHIA v. UNITED STATES.

### No. 1326.

District Court, E. D. Pennsylvania.
Dec. 17, 1941.

Wolf, Block, Schorr & Solis-Cohen and Nathan Silberstein, all of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., and J. Leonard Lyons, Sp. Asst. to Atty. Gen., for defendant.

KIRKPATRICK, District Judge.

This is an action for the recovery of alleged overpayment of income tax. The taxable year is 1935. The tax was assessed upon a profit realized by the plaintiff upon 250 shares of its own stock which it bought in 1931 and sold in 1935.

From all the circumstances I find as a fact that the transactions consisted of ordinary purchases of shares of stock, which were held for a time as assets of the corporation and then sold as such. Their real nature was the same as purchases and sales of the stock of any other corporation. They were not capital transactions, and the shares were not acquired or parted with in

connection with any readjustment of the capital structure of the corporation. The motive for the transactions is one of the circumstances from which their real nature may be found, but by no means controlling or conclusive.

The question remains whether the transactions as found above, from all their facts and circumstances, give rise to taxable gain.

■ The Statute which governs is Sec. 22(a) of the Revenue Law of 1934, 26 U.S. C.A. Int.Rev.Acts, page 669, defining gross income.[1] It is substantially the same as that contained in all previous acts from 1913 on. However, by 1934, the definition had, by interpretative Treasury regulations, uniform since 1920 and approved by re-enactments of Sec. 22(a) in successive revenue acts, acquired a limitation in respect of purchases and sales by a corporation of its own stock. The whole regulation need not be quoted here. It contained the following: " * * * if a corporation purchases any of its stock and holds it as treasury stock, the sale of such stock will be considered a capital transaction and the proceeds of such sale will be treated as capital and will not constitute income of the corporation. A corporation realizes no gain or loss from the purchase of its own stock." (U. S. Treasury Regulations 45, Article 542.) The generality of the language of Sec. 22(a) makes interpretive regulations appropriate (Helvering v. R. J. Reynolds Tobacco, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536), and consequently the Treasury rulings and regulations, including the one quoted above, are valid.

■ Sec. 22(a), with the regulation quoted, gave rise to a number of court decisions. Some applied the regulation without exception or qualification to all and any purchases or sales of its own stock by a corporation. Johnson v. Commissioner, 5 Cir., 56 F.2d 58; Squibb & Sons v. Helvering, 2 Cir., 98 F.2d 69. Others, which, it would seem, constituted the weight of authority, took the view that the regulation itself was intended to apply only to original issues or to purchases and

sales which were in fact capital transactions. Walville Lumber Co. v. Commissioner, 9 Cir., 35 F.2d 445; Commissioner v. S. A. Woods Co., 1 Cir., 57 F.2d 635; Commissioner v. Boca Ceiga Development Co., 3 Cir., 66 F.2d 1004, the last establishing the law for this Circuit. Under the latter decisions ordinary transactions by which the corporation acquired or parted with its own stock as it might any other asset were held to give rise to taxable gain or deductible loss as the case might be. It will be noted that these decisions did not question the validity of the regulation or its effectiveness as an interpretation of the statute, but merely decided what it meant, or rather what the statute and the regulation, taken together, meant.

■ The Commissioner of Internal Revenue, in spite of the adverse court rulings, consistently maintained that his regulation entirely eliminated gains or losses arising from transactions by a corporation in its own stock from the field of taxable income. But on May 2, 1934, he abandoned his position in this regard and promulgated an amendment (T. D. 4430) by which the old regulation was made to read: "Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. * * * But where a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. * * * Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of applicable statutes." It will be noted that the amended regulation is in almost the exact language of the Court's opinion in Commissioner v. S. A. Woods Mach. Co., supra. It seems to me that by adopting the language of the Court's opinion, the Commissioner was not merely making a correction of an inaccuracy in

[1] Sec. 22(a) is: "*General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

66

the existing regulation but was adding his own acquiescence and approval to the interpretation which the majority of the courts had given to it.

On May 10, 1934, the Revenue Law of 1934 was approved. The bill which formed its basis had passed the House on February 21. The Senate made some changes and passed the bill on March 28. The final bill was agreed to by both Houses on May 3. It re-enacted without change Sec. 22(a) of the Act of 1932, 26 U.S.C.A. Int.Rev. Acts, page 487.

█ If the decisions of the Circuit Court of Appeals in Commissioner v. S. A. Woods Mach. Co., supra, and the other cases which agreed with it are good law and established the proper construction of Sec. 22(a), then it seems to me that the entire question whether the amended regulation of May 2, 1934, or the earlier regulation is applicable is academic, because the new regulation would then have made no change whatever in the law.[2]

Under this view its promulgation was merely a recognition by the Commissioner that the old regulation was ambiguous, and an effort to make its scope plain so as to avoid confusion in the future. If, however, the Circuit Court of Appeals decisions in line with the Woods case were not effective to establish a definite interpretation of the statute and if the construction which the Commissioner abandoned when he amended the regulation on May 2, 1934, was the law up to the change, then I may say that I agree fully with the dissenting opinion of the Board of Tax Appeals in National Home Owners Service Corporation v. Commissioner, 39 B.T.A. 753, to the effect that it is not to be presumed that at the time the bill was drafted and considered by Congress and enacted into the law both Houses of Congress through their committees were not fully aware of the impending regulation which became Treasury Decision No. 4430, and of its actual promulgation prior to the enactment of the Revenue Act of 1934. This being so, we have a recognition of the new rule by the re-enactment of the statute after the formulation of the rule by way of an amended regulation.

█ Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, settled it beyond question that the Commissioner has authority to amend an interpretive regulation to follow a court decision interpreting an earlier statute, and Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101, decides that amended regulations may be effective, prospectively, from the date of their adoption without either express statutory adoption or implied Congressional approval from the re-enactment of the section to which they relate. This last decision, it would seem, answers in the negative the suggestion of Judge Hand in Squibb & Sons v. Helvering, 2 Cir., 98 F.2d 69, that the uniform interpretation placed upon 22(a) by the regulation and confirmed by the inaction of Congress was imbedded in the statute so deeply that only legislation could dislodge it.

An order may be presented entering judgment for the defendant.

## Findings of Fact

The Court finds the facts as contained in the stipulation filed by the parties. In addition thereto, the Court affirms and adopts all requests for findings of fact by both parties. The plaintiff's second request is affirmed with the added finding that the plaintiff was chartered for the purpose, inter alia, of purchasing and holding shares of its own capital stock, that the shares in question in this case constituted an investment of the company, and that the company derived a gain from their sale.

The finding of fact as to the real nature of the transaction contained in the foregoing opinion may be taken as an additional special finding.

## Conclusions of Law

The Court affirms all requests of the defendant for conclusion of law.

---

[2] Were it not for the decision of the Supreme Court in Helvering v. R. J. Reynolds Tobacco, supra, I would be inclined to adopt this view. The point does not seem to have been before the Court in that case. It is true that the argument proceeded upon the Commissioner's concession that but for the amended regulation "he would be bound to apply the statute in conformity to the (old) regulation." Even so, I think there is implicit in the opinion of the Supreme Court the holding that the new regulation changed the rule. The Court did not cite or refer to any of the Circuit Court of Appeals decisions which interpreted the statute to include as taxable gain profits from ordinary transactions by a corporation in its own stock.

Plaintiff's requests for conclusions of law Nos. 3, 4, 5, 6 and 7 are denied. Requests Nos. 1 and 2 are affirmed only to the the extent that the regulations in force are correctly stated. But, as has been held, these regulations taken together with the statutes had received interpretation by the Courts and under such interpretation did not mean that a corporation never sustained profit or suffered a loss on purchase or sale of shares of its own stock. As so modified these two requests are affirmed.